UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-5 XHAFER LAHO,

    Defendant.
                                           /

Case No. 12-20606

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND/OR NEW TRIAL [156]**

This criminal matter comes before the Court on Defendant Xhafer Laho's motion for a judgment of acquittal and/or a new trial. *See* Fed. R. Crim. P. 29, 33. After a five-day trial, Defendant Laho was convicted of three counts of making false statements to federal agents in violation of 18 U.S.C. § 1001(a)(2). Defendant's Rule 33 request for a judgment of acquittal argues that there was insufficient evidence at trial to support the jury's guilty verdicts on Counts Thirteen, Fourteen, and Fifteen of the Third Superseding Indictment. Defendant also requests a new trial under Rule 29, arguing that the jury's guilty verdict on these three Counts is against the manifest weight of evidence presented at his trial. For the reasons stated more fully below and on the record at the July 23, 2014 hearing, Defendant's motion for a judgment of acquittal and/or a new trial is DENIED.

**I.    Background**

In a Third Superseding Indictment, Defendant was charged with three counts of making false statements to federal agents, in violation of 18 U.S.C. § 1001(a)(2), and one

count of conspiring to obstruct justice, in violation of 18 U.S.C. § 371. After the government closed its case-in-chief, Defendant moved for a judgment of acquittal under Rule 29. The Court took that motion under advisement. After a five-day jury trial, Defendant was convicted of three counts (Counts Thirteen, Fourteen, and Fifteen of the Third Superseding Indictment) of making false statements to federal agents. Defendant was found not guilty of conspiring to obstruct justice (Count Five) in violation of 18 U.S.C. § 371. This matter is now before the Court on Defendant Laho's renewed motion for a judgment of acquittal and/or a new trial.

## II. Analysis

### A. Rule 29

Defendant's motion argues that the evidence at trial was not sufficient to sustain his conviction on three counts of making false statements to federal agents. The Court begins its analysis with the standard of review, then addresses Defendant's arguments for acquittal.

#### 1. Standard of Review

Under Rule 29 of the Federal Rules of Criminal Procedure, a defendant may move for a judgment of acquittal on the ground that there was insufficient evidence to support the jury's guilty verdict. "Evidence is sufficient to sustain a conviction if after viewing the evidence in the light most favorable to the prosecution, *and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony*, any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *United States v. Driver*, 535 F.3d 424, 428-29 (6th Cir. 2008) (internal quotation marks and citations omitted, emphasis in original). "In examining claims of insufficient evidence, this court does

not weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id.* (internal quotation marks and citation omitted). As the Sixth Circuit recently observed, "defendants bear a heavy burden when asserting insufficiency of the evidence arguments." *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010). That is because "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt," and "that the uncorroborated testimony of an accomplice alone may support a conviction." *Id.* (internal quotation marks and citations omitted).

### 2. Sufficient Evidence For Guilty Verdicts

Applying these principles, the Court now turns to Defendant's sufficiency-of-the-evidence arguments.

### a. Count Thirteen - False Statements - The 2005 Bentley

Count Thirteen of the Third Superseding Indictment charged Defendant Laho with making false statements in violation of 18 U.S.C. § 1001(a)(2). Specifically, it charged that:

> on or about August 3, 2012, within the Eastern District of Michigan, Southern Division, XHAFER LAHO, defendant herein, did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the Executive Branch of the United States Government, that is, having been advised of the identity of Special Agents of the Federal Bureau of Investigation who inquired of defendant <u>about a 2005 Bentley Continental</u>, <u>defendant stated that Tomo Duhanaj purchased the vehicle for defendant on either credit or debit in exchange for some land in Albania</u>, which said statement the defendant then and there knew was false in that the vehicle was purchased by defendant with a cashiers check in the amount of $81,500 from Tomo Duhanaj, registered in defendant's name, and then provided to Tomo Duhanaj for his own personal use, in furtherance of the conspiracy charged in Count Five of this Indictment and for purposes of concealing the conspiracy charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1001(a)(2).

(3d Superseding Indict. at 15 (emphasis added).)

Despite Defendant's claims to the contrary, after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, there is sufficient evidence to support the jury's guilty verdict. The government presented sufficient evidence to support its argument that Defendant was acting as a nominee purchaser for Tomo Duhanaj when Defendant registered the Bentley to himself and that Defendant did so to help Duhanaj hide and launder assets obtained through his loan sharking activities, including the following:

. Tomo Duhanaj paid for the car with an $81,000 cashier's check (Gov't Ex. 25);

. Defendant signed all the purchase papers and registered the Bentley to himself (Gov't Ex. 33; Trial Tr. Vol. 2, 18, 51, 53, 55, 69-74 May 7, 2014);

. Special Agent Christensen testified that Defendant was never observed driving the Bentley (Trial Tr. Vol. 4, 26-27 May 9, 2014);

. Special Agent Christensen testified that Tomo Duhanaj's mistress also drove a vehicle registered in Defendant's name (Trial Tr. Vol. 2, 18, 53-56 May 7, 2014);

. Special Agent Christensen testified that, of the eight vehicles driven by Tomo and Leke Duhanaj, only one was registered to either one of them (Trial Tr. Vol. 2, 17-18 May 7, 2014);

. Special Agent Hicks testified that when criminals try to hide their assets, they do so by distancing themselves from the money by using other people's names to purchase assets;

. Defendant Laho made incriminating statements in recorded conversations:

.   One week after the Bentley purchase, Defendant told Konchita Hasko, referencing Tomo Duhanaj, that "This one has nothing on his name.  He has everything on other people's names . . . .  Even his car is not on his name."  (Gov't Ex. 39.)

.   The day the search warrants were executed, August 2, 2012, Defendant and Tomo Duhanaj discussed the car:

> T. Duhanaj:   "For your car – for your car, you know that you gave me the land in Albania and I bought the car for you."
>
> Defendant:   "Yes."
>
> T. Duhanaj:   "Okay.  They may come."

(Gov't Ex. 46.)

.   The same day, August 2, 2012, Tomo Duhanaj explained to Defendant what he had told the federal agents during an interview:

> T. Duhanaj:   "I said to him, 'He gave me his land and that [sic] how I gave it to him – He told me he wanted a car.  He told me: 'Buy me a car.'  So I said:  Okay, I wrote him the check, and got the car.  He said: 'why is it that you got both the land and the car?'"
>
> Defendant:   "Didn't you tell him, 'no I haven't gotten it yet.'"
>
> T. Duhanaj:   "Listen, listen.  I said, 'I have yet to sign the land under my name.  It is under his name.'"
>
> Defendant:   "Yes."

(Gov't Ex. 47.)

. Special Agent Christensen also testified that Defendant agreed to be interviewed on August 21, 2012; and on that date, Defendant provided a different explanation for the Bentley purchase – that Defendant registered the Bentley in his name for fear that Tomo Duhanaj would be deported. (Trial Tr. Vol. 2, 69-70 May 7, 2014; Trial Tr. Vol. 4, 26 May 9, 2014.)

Considering that the Bentley purchase had all the characteristics of a straw purchase and Defendant's conflicting statements to the FBI, any rational jury could find beyond a reasonable doubt that Defendant made a false statement regarding the Bentley. Viewing the evidence in the light most favorable to the government and drawing reasonable inferences, there is sufficient evidence to support the jury's guilty verdict on Count Thirteen.

**b. Count Fourteen - False Statements - Money From Tomo Duhanaj**

Count Fourteen of the Third Superseding Indictment charged Defendant Laho with making false statements in violation of 18 U.S.C. § 1001(a)(2). Specifically, it charged that:

> on or about August 3, 2012, within the Eastern District of Michigan, Southern Division, XHAFER LAHO, defendant herein, did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the Executive Branch of the United States Government, that is, having been advised of the identity of Special Agents of the Federal Bureau of Investigation who inquired of defendant <u>whether Tomo Duhanaj had ever given him any money, defendant stated that he gave Tomo Duhanaj $30,000 during the fall of 2010 which Tomo Duhanaj later returned to defendant</u>, which said statement the defendant then and there knew was false in that Tomo Duhanaj gave defendant $59,070 in the form of four checks and one cashier's check between March 24, 2010 and April 23, 2012, in furtherance of the conspiracy charged in Count Five of this Indictment and for purposes of concealing the conspiracy charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1001(a)(2).

(3d Superseding Indict. at 15-16 (emphasis added).)

Again, despite Defendant's claims to the contrary, after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, there is sufficient evidence to support the jury's guilty verdict on Count Fourteen. This includes:

- Special Agent Hicks testified that Tomo Duhanaj received a deposit of $30,000 into his personal bank account from a cashier's check drawn by Defendant;
- Tomo Duhanaj provided Defendant with the following:
    - a personal check for $25,000 on December 28, 2010 (Gov't Ex. 20);
    - a personal check for $14,000 on May 26, 2011 (Gov't Ex. 21);
    - a cashier's check for $10,000 on October 4, 2011 (Gov't Ex. 22);
    - a personal check for $4,570 on November 11, 2011 (Gov't Ex. 23); and
    - a personal check for $5,500 on January 2, 2012 (Gov't Ex. 24).

(Trial Tr. Vol. 2, 56-62 May 7, 2014.)

- Special Agent Hicks testified that another way of hiding money is through a process called structuring – where individuals make multiple bank transactions with their money in an effort to hide assets;
- Defendant Laho made incriminating statements in a recorded conversation:
    - The day the search warrants were executed, August 2, 2012, and after the search, Defendant and Tomo Duhanaj were on the phone and Defendant asked Tomo Duhanaj, "If they ask me about the two or three checks that you've given me, I gave them to you last year. $30,000, do you remember?" (Gov't Ex. 48.09; Trial Tr. Vol. 3, 17, 23, 42, 44-46 May 8, 2014.)

7

. Special Agent Christensen testified that on August 21, 2012, Defendant told him that Tomo Duhanaj gave him a Jaguar for his help in trying to blackmail Ekrham Barda – something he failed to tell the federal agents during his first interview on August 3, 2012 (Trial Tr. Vol. 2, 68 May 7, 2014);

. Special Agent Christensen testified that on August 21, 2012, Defendant told him that he had made a couple of loans to Tomo Duhanaj in the amounts of $30,000 and $20,000, and that Tomo Duhanaj had paid him back – again, a different statement than Defendant had provided at his first interview (Trial Tr. Vol. 2, 56, 65 May 7, 2014).

Considering Defendant's conflicting statements to the FBI, Tomo Duhanaj's bank records, and Defendant's statements in wire-tapped conversations, any rational jury could find beyond a reasonable doubt that Defendant made a false statement regarding money he had received from Tomo Duhanaj. Viewing the evidence in the light most favorable to the government and drawing reasonable inferences, there is sufficient evidence to support the jury's guilty verdict on Count Fourteen.

### c. Count Fifteen - False Statements - Loan Assistance

Count Fifteen of the Third Superseding Indictment charged Defendant Laho with making false statements in violation of 18 U.S.C. § 1001(a)(2). Specifically, it charged that:

> on or about August 3, 2012, within the Eastern District of Michigan, Southern Division, XHAFER LAHO, defendant herein, did knowingly and willfully make a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the Executive Branch of the United States Government, that is, having been advised of the identity of Special Agents of the Federal Bureau of Investigation who inquired of defendant <u>whether he had ever assisted anyone in attempting to get a loan from Tomo Duhanaj, defendant stated that he had never done so</u>, which said statement the defendant then and there knew was false in that between June 6, 2012 and June 24, 2012, defendant attempted to assist an individual in obtaining a loan from Tomo Duhanaj in the amount of $20,000 to $25,000 in furtherance of the conspiracy charged in Count Five of

8

   this Indictment and for purposes of concealing the conspiracy charged in Count One of this Indictment, in violation of Title 18, United States Code, Section 1001(a)(2).

(3d Superseding Indict. at 16-17 (emphasis added).)

  Viewing the evidence in the light most favorable to the prosecution, and giving the government the benefit of all inferences that could reasonably be drawn from the testimony, there is sufficient evidence to support the jury's guilty verdict on Count Fifteen. The government's evidence on Count Fifteen includes:

  . Randall Roe's testimony that he agreed to try and obtain a loan from Tomo Duhanaj through Defendant, consensual recordings made by Randall Roe asking Defendant how he should get a $25,000 loan from Tomo Duhanaj (Gov't Ex. 36), and wire-tapped recordings of a phone conversation between Defendant and Tomo Duhanaj discussing a loan to Roe and using Roe's girlfriend's house as collateral (Gov't Ex. 40.02). (*See also* Trial Tr. Vol. 2, 19-20, 21, 25-27, 29 May 7, 2014.)

  . Special Agent Christensen testified that he asked Defendant if he ever assisted anyone in obtaining a loan from Tomo Duhanaj, and Defendant denied that he did (Trial Tr. Vol. 2, 62-63, 64-65 May 7, 2014).

  Despite Defendant's argument to the contrary, consummation of the loan transaction is not material. There was sufficient evidence for the jury to conclude that Defendant made a false statement to the FBI agent when he denied that he had ever assisted anyone in attempting to get a loan from Tomo Duhanaj. (3d Superseding Indict. at 16.) Accordingly, there was sufficient evidence to support the jury's guilty verdict on Count Fifteen.

  The Court now addresses Defendant's argument that he is entitled to a new trial under Fed. R. Crim. P. 33.

### B. Rule 33

#### 1. Standard of Review

A motion for a new trial is governed by Rule 33 of the Federal Rules of Criminal Procedure. That Rule provides that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The rule does not define interest of justice and the courts have had little success in trying to generalize its meaning." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (internal quotation marks and citation omitted). It is, however, "widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *Id.* This would include "reversible error or violation of the defendant's substantial rights." *Id.* at 374. Defendant here makes no claim of reversible error or violation of his substantial legal rights.

A Rule 33 motion for a new trial may also be based on the ground that the jury's verdict is against the weight of the evidence presented. As the Sixth Circuit recently observed, "[i]n deciding Rule 33 motions based on the manifest weight of the evidence, . . . a district judge may sit as a thirteenth juror and consider the evidence to ensure that there is no miscarriage of justice." *Munoz*, 605 F.3d at 373 n.9. "Generally, such motions are granted only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *United States v. Montgomery*, 358 F. App'x 622, 628 (6th Cir. 2009) (internal quotation marks and citations omitted).

#### 2. No Basis For A New Trial

Arguably, the only basis Defendant Laho offers for his Rule 33 request for a new trial is that the jury's verdict is against the manifest weight of the evidence presented at his trial.

10

This Court has determined that the jury's guilty verdicts on Counts Thirteen, Fourteen, and Fifteen are supported by sufficient evidence. Applying Rule 33, the Court also concludes that extraordinary circumstances do not exist here that would allow the Court to grant a new trial so as to prevent a miscarriage of justice. Even in situations where, like here, there is an inconsistent jury verdict (e.g., under Counts Thirteen, Fourteen, and Fifteen, the jury found Defendant guilty of making false statements in furtherance of the conspiracy to obstruct justice alleged in Count Five but acquitted on Count Five), a new trial is not warranted. *See United States v. Miller*, 161 F.3d 977, 985 (6th Cir. 1998) (observing that "a jury is free to render inconsistent verdicts or to employ relevant evidence in convicting on one count that it may seem to have rejected in acquitting on other counts.") (internal quotation marks and citation omitted). As the Supreme Court observed in *Harris v. Rivera*, 454 U.S. 339, 344 (1981) (per curiam), "[i]nconsistency in a verdict is not a sufficient reason for setting it aside."

### III. Conclusion

For the above-stated reasons, Defendant Laho's motion for judgment of acquittal and/or new trial is DENIED.

SO ORDERED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: July 28, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 28, 2014, by electronic and/or ordinary mail.

        s/Carol J. Bethel
        Case Manager