UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Respondent,                                Case No. 12-20606

v.                                           Honorable Nancy G. Edmunds

XHAFER LAHO,

    Petitioner.

_____/

**OPINION AND ORDER DENYING PETITIONER'S § 2255 MOTION FOR RELIEF FROM JUDGMENT [207]**

Petitioner–Defendant Xhafer Laho was convicted of three counts of making a false statement to a federal officer in violation of 18 U.S.C. § 1001. Laho was sentenced to 48 months of incarceration. Shortly after withdrawing his direct appeal, Laho filed the instant motion for relief from judgment under 28 U.S.C. § 2255. In essence, Laho argues that his trial counsel "provided ineffective assistance . . . when he advised Petitioner that his guideline range would be 0-6 months even if Petitioner were convicted of all counts at trial and this erroneous information led Petitioner to reject the Government's plea offer." (Laho's Mot. 7).[1]

On November 8, 2016, the Court conducted an evidentiary hearing to consider the veracity of Laho's claim. At the hearing, the Court heard testimony from three witnesses:

---

[1] While Laho asserts several theories in support of his position that he "is being held unlawfully", his brief is narrowly focused on the advice he received pertaining to the Sentencing Guidelines. It is well-settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.1996) (citation and quotation marks omitted). Nevertheless, the Court briefly considers each of Laho's arguments to eliminate any doubt regarding the constitutional sufficiency of his representation.

Laho's former counsel, Richard Shulman, co-defendant John Goci, and Laho himself. In the end, the Court finds that Shulman's testimony was clear, confident, and credible. Accordingly, for the reasons specified more thoroughly below, the Court DENIES Laho's petition for post-conviction relief. [207]

**I.   ANALYSIS**

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." To prevail on a § 2255 motion, the petitioner must allege: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (internal quotations omitted).

To prevail on an ineffective assistance claim, Laho must show that his counsel's performance was both deficient and prejudicial to his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* In other words, Laho must show that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. "This standard is highly deferential, and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Mallett*, 334 F.3d at 497 (quoting *id.* at 689).

**A. Sentencing Exposure**

According to Laho, the "heart of the issue before the Court . . . is whether trial counsel properly advised [him] of the sentencing guideline risks of going to trial . . . ." (Laho Supp. Br. 2). Indeed, this question formed the very basis of the Court's decision to grant Laho's request for an evidentiary hearing. The first *Strickland* prong, then, turns entirely on the comparative credibility of Laho and John Goci in one corner–both of whom were convicted of making false statements to federal authorities–and Laho's former counsel, Richard Shulman, in the other.

At the evidentiary hearing, Laho testified that he discussed the Government's final plea offer with Shulman during a brief recess at the pretrial conference on April 17, 2014. (Dkt. 224, November 16, 2016 Hr'g Part I, Tr. 16) It was at that time, Laho maintains, that Shulman "told me . . . the Government is offering zero to six months. I said, I don't feel I did anything wrong. He said my opinion is even if we go to the trial we're going to be zero to six, same thing. I said if it's going to be zero to six then I take the risk." (*Id.* at Tr. 16-17). Goci likewise testified that he overheard Shulman advise Laho "that [he] was [] facing six months if he los[t]." (*Id.* at 31:7-7). According to Laho, this was the first time he "talked numbers" with Shulman prior to the trial. (*Id.* at 8:7-15).

Shulman, for his part, has a very different memory of the events leading up to the so-called pivotal conversation in the courthouse corridor. Indeed, Shulman testified that he "specifically recalled" meeting with Laho prior to the pretrial conference to discuss "the fact that if he was convicted of the charges . . . all of them or some of them . . . his exposure would be *much greater* than zero to six months which was being offered *at the time* by the government." (Dkt. 223, November 16, 2016 Hr'g Part II, Tr. 17-18) (emphasis added). In other words, the pretrial conference was *not* the first time the Government offered Laho a

plea of 0-6 months. And the record is clear on this point. *See Id.* (Part II, Tr. 49) ("Q. Did you eventually receive a plea offer from the Government? A. Yes. Q. What was the Government's offer? A. They offered him to plead guilty to a single count of making a false statement."); *see also* (Gov. Ex. 2). For that reason, Shulman explained, "[w]e [previously] looked at different scenarios. We looked at scenarios if he was convicted on one count, two counts, the primary [extortion] count . . . we talked about [] the exposure with different scenarios if he's convicted of different counts." (Part I, Tr. 52: 13-21). And so, when the Government presented essentially the same offer, from a sentencing perspective, at the final pretrial conference, Shulman was not the least bit surprised that Laho was uninterested, because: "at th[at] time . . . our position had become somewhat entrenched. Barring being able to get a misdemeanor, I don't think [Laho] was wanting to take, entertain any offers at that point." (Part II, Tr. 24:13-20). All of this significantly undercuts Laho's claim that Shulman, for reasons that no one can adequately explain, dramatically changed his opinion of the potential sentencing exposure on the day of the pretrial conference.

Furthermore, the Court has reason to doubt the veracity of Laho's testimony for a host of reasons. First, his argument is premised on one isolated conversation during a brief recess at the final pretrial conference. But that is hardly the universe of relevant background--much of which Laho conveniently ignores in his petition. Indeed, as discussed, despite the best efforts of Laho's counsel, Shulman remained confident and consistent in his position that Laho "faced some serious exposure to the crimes in which he was charged, and I can tell you with certainty that the exposure to which I had counseled him was much greater than zero to six months." (*Id.* Tr. 7:20-24). Shulman's testimony is bolstered by two "acknowledgment of indictment" forms–signed by both Shulman and

4

Laho–indicating that Laho faced up to five years' imprisonment for each of the counts in the indictment. *See* (Dkt. 71, 124). Furthermore, just months before trial, Laho confirmed that he understood the "maximum sentence [was] five years . . . ." (Dkt. 194, Initial Appearance, Tr. 3-4).

And that's hardly the most problematic aspect of Laho's claim. According to Shulman, while the two were walking around the courthouse discussing the Government's final plea offer, Laho "indicated to me that under no uncertain terms that he didn't feel he was guilty of what was being alleged and he wanted to go to trial." (Part 1, Tr. 53:8-13). Laho confirmed this, testifying in reference to the same conversation that, "I said I don't feel like I did anything wrong." (*Id.* at Tr. 17:23-25). In fact, Laho steadfastly maintained his innocence when questioned by the Government on cross-examination about the truthfulness of the statements leading to his conviction. *See* (*Id.* Tr. 28:8-13) ("Q. So it's your testimony today that you were truthful to the best of your ability with the FBI. A. Yes. Q. And you never lied to them. A. No, . . . ."). To prevail on the second, or prejudice, prong of the *Strickland* standard, a petitioner "must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. 2052. But here, even assuming Shulman did advise Laho that his post-trial sentencing exposure was 0-6 months–which is flatly contradicted by the record–Laho was never in a position to tender a factual basis in support of a guilty plea. And this is critical; the Supreme Court has cautioned "that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea[.]" *North Carolina v. Alford*, 400 U.S. 25, 38 n. 10, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *see also* Fed. R. Crim. P. 11 ("Before entering judgment on a guilty plea, the court must determine

that there is a factual basis for the plea."). In other words, even if Laho could win the credibility contest, he still cannot prove that he was prejudiced by Shulman's purportedly improper conduct.

Nor does Goci's testimony move Laho's claim any closer to the goalpost. Indeed, contrary to Goci's representation, Shulman testified that was he was alone with Laho when they discussed the Government's final offer. (Part I, Tr. 53:15-17). And even assuming Goci did manage to overhear part of their conversation, there is no question that he was not present for any prior conversations between the two-- suggesting, at a minimum, that he was missing some important context. Moreover, the Court has reason to be skeptical about Goci's credibility; he pled guilty to making false statements at the direction of a co-defendant in this very case. In Goci's own words: "they asked me did anybody tell me what to say, I said, no, that was my sin. That was my crime." (*Id.* Tr. 41:16-17). In this way, crediting Goci's testimony requires the Court to look past his conviction, disregard Shulman's testimony, and assume that he correctly overhead and interpreted a very specific statement at a particularly chaotic time. This, the Court is unwilling to do.

In sum, upon considering the testimony of Laho, Goci, and Shulman, the Court is satisfied that Laho's decision to reject the Government's plea offer was voluntary, purposeful, and with full knowledge that his sentence could be much higher after trial.

### B. Undeveloped Claims

Laho's remaining three claims, none of which have been properly developed, are worthy of only summary treatment. First, Laho suggests that he was "deprived of effective assistance of counsel due to failure of his attorney to educate him regarding the charges against him, and insure that he understood that his conduct could have resulted in

conviction . . . ." (Laho's Petition, 2). But Laho's argument ignores Shulman's detailed testimony to the contrary. According to Shulman, "[w]e went over the factual scenario. We went over witness testimony. We went over the discovery. I recall spending several hours with him playing back audio tapes that contained his conversations and conversations with others relating to this case. And I discussed what his position was on these conversations." (Part I, Tr. 47-48). More to the point, Shulman maintains that he explained the "charges to him", "went over the indictment", and discussed "the penalties." *Id.* The Court find's Shulman's testimony credible, and is not persuaded by Laho's self-serving assertions lacking any support in the record.

Next, Laho contends that Shulman was ineffective for failing "to timely file pretrial motions relating to the admissibility of a highly inflammatory, irrelevant photograph as an exhibit[.]" (Laho Petition, 2). Once again, however, the record is clear that Shulman did object to the photograph in question (depicting Tomo Duhanaj's picture with guns and stacks of money) both before jury selection and during trial. *See* (Dkt. 212, Voir Dire Hrg Tr. 17); (Dkt. 199, Trial Tr. 52-54). While the Court ultimately admitted the photograph, Laho did not seek to challenge this evidentiary decision on appeal. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) ("claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime.' ")

Finally, Laho generically argues that Shulman misrepresented "the scope of his experience in Federal Court and his knowledge of federal criminal practice." (Laho Petition, 3). There is simply nothing in the record, by way of Laho's testimony or otherwise, to

support this proposition. Moreover, while it's true that the bulk of Shulman's trial experience up to that point took place in state court, Laho was acquitted of the most serious charge against him and significantly benefitted from Shulman's voluminous objections to the pre-sentence investigation report. *See* (Dkt. 183, Ex. A). There is no question that this lowered Laho's exposure under the Sentencing Guidelines.

For those reasons, the Court is satisfied that Laho's Sixth Amendment right to counsel was adequately protected, and his petition for post-conviction relief is thus DENIED.

### C. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 and 2255 Proceedings requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant . . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir.1997). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement

to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (internal quotes and citations omitted).

A habeas petitioner's ineffective assistance of counsel claim must make a substantial showing of the denial of a constitutional right so as to justify the issuance of a certificate of appealability. *See Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000). For the reasons stated in this opinion, the Court will deny Laho a certificate of appealability because he has failed to make a substantial showing that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. The Court concludes that reasonable jurists would not debate the Court's denial of Laho's claim of ineffective assistance of counsel, and thus declines to issue a certificate of appealability.

## II. CONCLUSION

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is DENIED WITH PREJUDICE. IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

SO ORDERED.

       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated: December 28, 2016
I hereby certify that a copy of the foregoing document was served upon counsel of record on December 28, 2016, by electronic and/or ordinary mail.

       s/Carol J. Bethel
       Case Manager